# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 24-272

**STATE OF LOUISIANA**

**VERSUS**

**DERRICK JAWOND CHELEY**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 97125
HONORABLE TONY A. BENNETT, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## VAN H. KYZAR
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Shannon J. Gremillion, Van H. Kyzar, and Charles G. Fitzgerald, Judges.

**AFFIRMED.**

**Paula C. Marx**
**Louisiana Appellate Project**
**P.O. Box 82389**
**Lafayette, LA 70598-2389**
**(337) 991-9757**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Derrick Jawond Cheley**

**Terry W. Lambright**
**District Attorney**
**William R. Thornton**
**Assistant District Attorney**
**P.O. Box 1188**
**Leesville, LA 71446**
**(337) 239-2008**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**KYZAR, Judge.**

Defendant, Derrick Jawond Cheley, entered into a plea agreement whereby he entered a plea of no contest to the offense of possession with the intent to distribute a Schedule II controlled dangerous substance, fentanyl, and was sentenced to twenty-two years at hard labor. He now appeals from a pre-trial/pre-plea ruling denying his motion to suppress. For the reasons herein, we affirm the trial court's denial of the motion.

## FACTS AND PROCEDURAL HISTORY

Defendant was charged by bill of information, dated January 19, 2022, with ten felony offenses, including possession of the Schedule II controlled dangerous substance, fentanyl, with the intent to distribute, in violation of La.R.S. 40:967(A). The offense date was listed as October 21, 2021.[1]

The facts leading to the arrest show that Vernon Parish Narcotics Task Force (VPNTF) Agent Misti Martin presented Judge Scott Westerchil with an application for a search warrant, and affidavit in support thereof, on October 21, 2021. The warrant was signed and executed by VPNTF that same day, resulting in Defendant's arrest following the recovery of illegal drugs, guns, and money during a search of his hotel room.

During pre-trial proceedings, Defendant filed a motion to suppress the evidence seized during the execution of the search warrant obtained by Agent

---

[1] Defendant was also charged with nine other felony counts, all allegedly occurring on the same date: possession with intent to distribute Schedule II, methamphetamine; possession with intent to distribute Schedule II, cocaine; possession with intent to distribute Schedule II, ANPP; possession of Schedule I, heroin; possession with intent to distribute Schedule I, flualprazolam; illegal carrying of weapons by possessing a firearm while unlawfully in possession of a controlled dangerous substance; unlawful possession of a firearm; possession of Schedule III, alprazolam; possession of Schedule III, buprenorphine.

Martin. At the conclusion of the hearing, the motion was denied by a different judge of the court.[2] On December 11, 2023, pursuant to a plea agreement, Defendant entered a plea of no contest to the count of possession of the Schedule II drug, fentanyl, with the intent to distribute, and was sentenced to twenty-two years at hard labor. Pursuant to the plea agreement, the other nine counts in the bill of information were dismissed, as were four counts in another bill of information, and the State agreed not to pursue habitual offender enhancement proceedings. The plea was entered pursuant to *State v. Crosby*, 338 So.2d 584 (La.1976), whereby Defendant reserved his right to appeal the denial of the motion to suppress.

At the hearing on the entry of the plea, the State provided the factual basis for the conviction, which was not disputed by Defendant:

> The State contends that on or about October 21st, 2021, officers with the Vernon Parish Narcotics Task Force executed a search warrant at Room 139 of the Landmark Hotel located at 3080 Colony Boulevard here in Vernon Parish, Louisiana. Upon their search of the room that . . . the defendant resided in, within that room, uh, they located a safe. That safe, uh, was opened using a key or combination that was found on the defendant's person. Once that safe was opened, inside there were located, uh, numerous narcotics and, uh, including, uh, a substance including fentanyl with an amount less than 28 grams. Those substances were seized as evidence. They were sent to the Crime Lab. They were tested. The test revealed that said substance did contain an amount of fentanyl. All of these substances were found in the room, uh, where the defendant was residing, within his dominion and control. And fentanyl is a controlled dangerous substance under Schedule II.

In his counsel-filed brief, Defendant asserts solely that the trial court erred in denying his motion to suppress evidence recovered during the execution of the

---

[2] Defendant also filed a motion to compel disclosure of the confidential informant referenced in the affidavit. At the hearing on this motion, Defendant did not present any evidence nor did he argue the motion. The motion was denied along with the motion to suppress.

October 21, 2021 search warrant. In his pro se brief, Defendant argues seven

assignments of error, which we summarize here for clarity:[3]

> Assignments of Error 1–3 and 6–8: The State of Louisiana failed to disclose evidence favorable to Defendant pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963).

> Assignment of Error 4: The State should have been required to disclose the identity of the confidential informant listed in the affidavit in support of the search warrant.

> Assignment of Error 5: Ineffective assistance of counsel.

## ERRORS PATENT

In accordance with La.Code Crim.P art. 920, all appeals are reviewed for

errors patent on the face of the record. After reviewing the record, we find that there

are no errors patent.

## OPINION

The United States and Louisiana constitutions protect people from

unreasonable searches and seizures.[4] Louisiana Code of Criminal Procedure Article

703(A) provides that "[a] defendant adversely affected may move to suppress any

evidence from use at the trial on the merits on the ground that it was

unconstitutionally obtained." Further, La.Code Crim.P. art. 703(D) provides that

"the burden of proof is on the defendant to prove the ground of his motion, except

that the state shall have the burden of proving the admissibility of a purported

---

[3] As they are uncounseled assignments, we find that the assertions are somewhat rambling, disjointed, and difficult to decipher. However, this court has attempted to summarize the assignments in an organized manner, providing the main scope of the arguments and combining assignments where duplicated within the brief.

[4] United States Constitution Amendment IV; and La.Const. art. 1, § 5.

confession or statement by the defendant or of any evidence seized without a warrant."

Defendant argues that Agent Martin's supporting affidavit was insufficient to provide probable cause as it was based on general conclusory statements, and it failed to articulate the reliability or trustworthiness of the confidential informant involved. As a result, he claims that the search warrant based on the affidavit was defective, and the search based upon that warrant violated his constitutional right against unreasonable search and seizure. Defendant further argues that the "good faith" exception to the exclusionary rule, as recognized by *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405 (1984), is inapplicable in this case.[5]

As Defendant challenges the sufficiency of the warrant's supporting affidavit and the inapplicability of the good faith exception to the exclusionary rule, the burden of proof lies with him.

> Probable cause for an arrest exists when the facts and circumstances, of which the police have reasonably reliable information, justify the belief that the person to be arrested has committed a crime. The magistrate may issue an arrest warrant based on the facts and circumstances asserted in the affidavit, as well as those asserted verbally by the officer at the time the warrant is obtained. *State v. Haynie*, 395 So.2d 669 (La.1981).

> The process of determining probable cause for the issuance of search and arrest warrants does not involve certainties or proof beyond a reasonable doubt, or even a prima facie showing, but rather involves probabilities of human behavior, as understood by persons trained in law enforcement and as based on the totality of circumstances. See *Illinois v. Gates*, [462] U.S. [213], 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The process simply requires that enough information be presented to the issuing magistrate to enable him to determine that the charges are not capricious and are sufficiently supported to justify

---

[5] The good-faith exception provides that "evidence obtained by law enforcement officials acting in objectively reasonable good-faith reliance upon a search warrant is admissible in the prosecution's case-in-chief, even though the affidavit on which the warrant was based was insufficient to establish probable cause." *U.S. v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988).

bringing into play the further steps of the criminal justice system. *Jaben v. United States*, 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965).

Furthermore, this case involves the review of a magistrate's determination of probable cause prior to issuing the warrant. Such a determination is entitled to significant deference by reviewing courts. *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). As the Supreme Court stated in *Gates,* "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review." [462] U.S. at [236], 103 S.Ct. at 2331. Additionally, because of "the preference to be accorded to warrants", marginal cases should be resolved in favor of a finding that the issuing magistrate's judgment was reasonable. *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965).

*State v. Rodrigue*, 437 So.2d 830, 832–33 (La.1983) (footnote omitted).

The affidavit of Agent Martin in support of the search warrant provided the following:

During the month of October 2021[,] the Vernon Parish Narcotics Task Force began recieving [sic] complaints in reference to suspected illegal narcotic activity at what is believed to be 3080 Colony Blvd Room 139 Landmark Hotel. The complaints consisted of high traffic with vehicles/persons going to the room and only staying for short periods of time and that this activity takes place during the daytime and evening/early morning hours as well. This activity is consistant [sic] with the distribution of illegal narcotics from a residence/hotel room. The VPNTF was able to determine that Derrick Cheley was residing in Room 139.

During the month of October 2021[,] the VPNTF recieved [sic] information from a confidential informant who stated he/she could purchase illegal narcotics Crack Cocaine from Derrick Cheley at what is believed to be 3080 Colony Blvd Room 139 Landmark Hotel.

During the month of October[,] the VPNTF conducted 2 controlled purchases of crack cocaine from Cheley from 3080 Colony Blvd Room 139. The VPNTF conducted visual surveillance from a safe distance during both transactions. The last control [sic] purchase was within the last 48 hours for the purpose of a search warrant for the residence. All policy and procedures were followed to ensure the integrity of the operation.

Cheley has produced the amounts of illegal narcotics purchased by VPNTF each time and appears to maintain enough illegal narcotics to supply others, leading this investigator to believe that Cheley maintains a quantity of illegal narcotics at all times for the purpose of distribution.

5

I respectfully request the issuance of a search warrant to enter the room and search the room, believed to be 3080 Colony Blvd Room 139 Landmark Hotel, the known residence of Cheley, any and all vehicles associtaed [sic] with Cheley, and seize any illegal narcotics on the property and inside the residence. Additionally to search the residence, property, cutriliage, [sic] vehicles and persons on the property at the time the search warrant is executed for evidence of drug transactions/ distributioin, [sic] illegal narcotics, ledgers/notes maintained by drug dealers related to dates and amounts, drug paraphernalia, money/cash from the transactions of illegal narcotics and possible stolen items that were traded for narcotics.

In *State v. Brown*, 19-682, p. 19 (La.App. 3 Cir. 6/17/20), 299 So.3d 661, 674–75, *writs denied*, 20-927, 20-925 (La. 11/24/20), 305 So.3d 100, 105, this court considered the sufficiency of an affidavit supporting a search warrant that was applied for by the very officer involved in the case at hand, Agent Martin of the VPNTF. There, the affidavit was based on information from a confidential informant, who had previously provided information leading to the arrest of five drug dealers, that the defendant was selling drugs from his residence located at the address indicated. The affidavit reported that crack cocaine had been purchased at the defendant's residence on three separate occasions, with one purchase occurring within forty-eight hours of the affidavit's submission. It further specified that drug purchases had been made at the address and that the defendant had retrieved the drugs while at the residence.

In upholding the validity of the search warrant and affirming the denial of the motion to suppress, this court provided that following analysis:

> To review the trial court's decision herein, this court must now apply the two-part test recited above. In the first step, we need to determine whether the good faith exception applies in the instant case. If it does, we have no need to determine whether the affidavits do, in fact, establish probable cause. *See* [*U.S. v. Brown*, 567 F.App'x. 272, 280-81 (5th Cir. 2014).] Without replicating the entirety of the affidavits, which appellate counsel has done in brief, we find the affidavits included sufficient indicia of probable cause and were not so deficient that the executing officers could not have presumed validity.

6

> Additionally, there is no claim that the affiants lied or that the magistrates wholly abandoned their judicial roles. Accordingly, in light of *Brown* and [*U.S. v.*] *Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677, cited extensively therein, we find that the good faith exception would apply, and Mr. Brown could not have succeeded in meeting his burden of proving the evidence should have been suppressed.

*Id.* at 674.

Utilizing that same analysis, we first look to determine whether the good faith exception applies. In the present case, Defendant does not allege, nor did he prove, that Agent Martin lied in any way in her affidavit, nor is there any claim or evidence that the magistrate issuing the warrant wholly abandoned his judicial role. In addition, the affidavit in question was not so lacking in sufficient indicia of probable cause, or so deficient, that the executing officers could not presume that it was valid. As noted by the Supreme court in *U.S. v. Leon*, 468 U.S. 897, 923, 104 S.Ct. 3405, 3421 (1984), "depending on the circumstances of the particular case, a warrant may be so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." That is not the case here, as the warrant specifies the precise place to be searched, the things sought to be seized, and the person involved. It further sets forth in sufficient detail why the agents had reasonable cause to believe that Defendant was dealing drugs out of his hotel room. Accordingly, we find the good faith exception to the exclusionary rule applies here, and the trial court did not err in denying the motion to suppress.

***Pro-se Assignments of Error***

In his pro se assignments of error numbers one through three and six through eight, Defendant asserts that the State failed to disclose evidence favorable to him pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963), and that this

7

failure impacted the trial court's decision to deny the motion to suppress. His primary complaint centers on the records or case files for the controlled buys testified to by Agent Martin, together with the identity and background of the confidential informant.

> Under well-established law, a prosecutor may not suppress evidence favorable to the accused and material to either guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The *Brady* rule encompasses evidence that impeaches the testimony of a witness when the reliability or credibility of that witness may determine guilt or innocence. *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985); *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); *State v. Knapper*, 579 So.2d 956, 959 (La.1991). A *Brady* violation occurs when the "evidentiary suppression undermines confidence in the outcome of the trial." *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995) (internal quotation marks and citations omitted).

*State v. Garcia*, 09-1578, p. 51 (La. 11/16/12), 108 So.3d 1, 36–37, *cert. denied*, 570 U.S. 926, 133 S.Ct. 2863 (2013).

We first note that the Defendant raises the *Brady*-violation allegations despite the fact that he failed to reserve the issue for review on appeal at the time of his plea.

> Under *State v. Joseph*, 2003-315 (La. 5/16/03), 847 So. 2d 1196, failure of the defendant to specify the pre-plea issues for review does not absolutely preclude his ability to seek review. However, we may limit our review in scope. In limiting the scope of review, we must presume that the trial court permitted the *Crosby* plea reservation to be no broader than necessary to effectuate the underlying purpose of the plea. *Id.* As such, our review will be limited to evidentiary rulings that would "go to the heart of the prosecution's case." *Id.* Defendant would have waived such issues by entering an unqualified guilty plea. For example, appellate review of a trial court's denial of a motion to suppress is reserved whereas rulings as to the conduct of the trial, such as a motion to continue, are not preserved.

### *BRADY* VIOLATION

> Rachal alleges that the state withheld exculpatory evidence, in violation of his rights as expounded upon by the Supreme Court of the United States in *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). The *Brady* court held that where a state fails to provide evidence favorable to an accused upon his request for such

evidence, then the state violates the due process rights of the accused if the evidence is material to either guilt or punishment. *Id.* Good faith or bad faith by the state in suppressing such evidence is not considered. *Id.*

*State v. Rachal*, 53,398, 4–5 (La.App. 2 Cir. 7/22/20), 300 So.3d 483, 489, *writs denied*, 20-1249, 20-1198 (La. 1/12/21), 308 So.3d 713, 715.

In *Rachal*, the second circuit proceeded to review the issue on appeal. We will do likewise.

In his pro se brief, Defendant urges a *Brady* violation as it relates to the validity of the search warrant concerning the confidential informant and the case files for the underlying drug buys set forth in the affidavit:

> [T]hese agents acted recklessly in getting search affidavit. Confidential Informant should have been disclosed. Failure to provide the identity and information may be prejudicial error, especially where the informant was the only known witness of the crime and the disclosure of the informant's identity was the only way to determine the validity of the search.
>
> Affiant Misti Martin never proved any control buy at suppression hearing. Judge Bennett never ruled on the facts of a control buy, just took the word of the agent at suppression hearing as well as the signing magistrate of the warrant never made basis ruling [sic] because they never produced any information, only spoke of a secret file, of a distribution which is false testimony and accusation because they testified they had no video or any VPNIF [sic] witness a control buy as she stated in affidavit for search that VPNIF [sic] made a control buy which was false. Then they used this alleged purchase by the C.I. under the protection which the C.I. is involved in criminal activity if even real, along with not reliable or trustworthy [sic]. She could have planted the drugs herself and then said the defendant's name. Defense [sic] should be protected from these illegal acts and these unconstitutional searches.

We find no merit to Defendant's pro se arguments. We note that there were no specific allegations of what documents were withheld from Defendant, as *Brady* evidence, other than a non-specific reference to the case files for the controlled drug buys by the confidential informant. We note that the charges related to the controlled drug buys by the confidential informant, involving cocaine, were not part of the

9

charge to which Defendant pled guilty except as it relates to probable cause for the search. Neither the testimony nor the identity of the confidential informant was critical to the affidavit given the personal observations of Agent Martin and her recitation of those events by members of the task force. While Defendant in his counsel-urged brief makes much of the fact that the confidential informant was not disclosed, the affidavit did not attest to the reliability and trustworthiness of the confidential informant, and that the citizen complainants were not identified, none of this information is critical to the affidavit considering it as a whole.

Agent Martin specified that two controlled buys were actually observed by agents of VPNTF, one within forty-eight hours of the request for the warrant, drugs were obtained in those buys, the quantities were sufficient indicia of drug dealing, money was provided, and the policies and procedures for such controlled buys were followed. She also verified by personal observation that Defendant was indeed residing at the place and was present. It was also personally observed, as reflected in the affidavit, that people were coming and going from the place and staying only short periods of time, which she attested to was indicia of drug activity in the residence.

It was Defendant's burden to prove that evidence was withheld that meets the *Brady* criteria.[6] He does not say precisely what evidence was withheld, and no such proof is offered. He only offers speculation that there may have been evidence impeaching the confidential informant or materials in the controlled-buy case files that may have been favorable to him. He does not allege nor show what prejudice

---

[6] "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 1948 (1999).

occurred from the failure to disclose this nondescript evidence. Thus, there is no *Brady* violation cognizable by this court.

In his fourth pro-se assignment of error, Defendant alleges that the trial court should have granted his motion to compel disclosure of the identity of the confidential informant. As noted above, Defendant filed a motion for the disclosure of the confidential informant's name in proceedings prior to his plea. That motion was denied the same day as the motion to suppress. Defendant submitted no evidence in support of the motion, nor was it argued. Further, the issue of the ruling on this motion was not reserved for appeal at the time of the plea.

"The defendant must *specifically reserve* the right for appellate review of any rulings of the trial court prior to entering his guilty plea." *State v. Becnel*, 20-587, p. 4 (La.App. 1 Cir. 4/16/21), 323 So.3d 408, 411 (emphasis added). Since Defendant did not specifically reserve the issue of the denial of his motion for disclosure of the confidential informant's identity, that issue has been waived and will not be considered further.

In his final pro-se assignment of error, Defendant contends that he was denied effective assistance of counsel. In *State v. Holder*, 99-1747, pp. 1–2 (La.App. 3 Cir. 10/11/00), 771 So.2d 780, 781, this court looked at a post-plea appeal wherein the defendant alleged ineffective assistance of counsel, without having reserved her right to appeal the issue at the time of her plea:

> A guilty plea waives such defects. *State v. Moore*, 595 So.2d 334 (La.App. 3 Cir.1992), *after remand*, 614 So.2d 145 (La.App. 3 Cir.1993), citing *State v. Williams*, 498 So.2d 1201 (La.App. 3 Cir.1986). Louisiana courts have held that ineffective assistance of counsel is a non-jurisdictional defect. *State v. Mellion*, 439 So.2d 586 (La.App. 1 Cir.1983), *writ denied*, 443 So.2d 1118 (La.1984), citing *State v. Jenkins*, 419 So.2d 463 (La.1982). *See also State v. Castaneda*, 94-1118 (La.App. 1 Cir. 6/23/95); 658 So.2d 297. Further, the jurisprudence has typically viewed conflict claims as a species of

ineffectiveness claims. See, e.g., *State v. Salinas*, 97-716 (La.App. 3 Cir. 10/29/97); 703 So.2d 671, *reversed on other grounds*, 97-2930 (La.9/25/98); 719 So.2d 1035. Thus, the Defendant's conflict claim would be waived, and this assignment would have no merit.

In the present case, Defendant did not specifically reserve the right to appeal a claim of ineffective assistance of counsel. A *Crosby* plea only preserves for appeal those issues reserved for appeal at the time of the plea. *Becnel*, 323 So.3d 408. Since Defendant did not specifically reserve the issue of any pre-plea ineffective assistance of counsel, that issue has been waived and will not be considered here.

## DECREE

For the foregoing reasons, Defendant's conviction for possession of the Schedule II drug, fentanyl, with the intent to distribute, is affirmed.

**AFFIRMED.**